UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Michael John McLeod, et al.<br>Individually and on behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VALVE CORPORATION, a Washington corporation,<br><br>Defendant. | Case No. 3:16-cv-01018-AWT<br><br><br><br><br>July 26, 2016 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VALVE CORPORATION'S MOTION TO TRANSFER FOR *FORUM NON CONVENIENS***

Plaintiff entered into an agreement with Valve that includes a forum-selection clause designating the state or federal courts in King County, Washington as the exclusive jurisdiction and venue for any litigation between the parties. Plaintiff affirmed the agreement multiple times, most recently in May. Yet Plaintiff filed this lawsuit in Connecticut, in contravention of the forum-selection clause.

The Supreme Court has instructed that federal courts are to enforce valid forum-selection clauses except in the most exceptional cases. *Atl. Marine Const. v. U.S. District Court for the Western District of Texas*, 134 S. Ct. 568, 581 (2013). This is not an exceptional case. "[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Plaintiff cannot meet that burden here.

As such, the parties' forum-selection clause should be enforced and this case transferred under 28 U.S.C. § 1404(a) to the Western District of Washington, which is the proper court to compel arbitration under the same agreement that contains the forum-selection clause.

1

# STATEMENT OF FACTS

A.   **Valve, Steam, Counter-Strike: Global Offensive and Skins**

Plaintiff's complaint focuses on "skins," which are a virtual item in a video game named Counter-Strike: Global Offensive ("CS:GO"). CS:GO is distributed by Valve and played on its Steam platform.

Valve is in the business of developing and distributing video games and content for use on personal computers. Declaration of Christopher Boyd ("Boyd Decl.") ¶ 2. Valve also operates the Steam digital distribution and online gaming platform. *Id.* Over 4000 game titles are available on Steam. *Id.* Steam includes an online store, where users can purchase subscriptions to games. *Id.* Steam also features a "Steam Wallet" for virtual Steam currency that subscribers can purchase using various payment methods. *Id.* That virtual currency can then be later used to purchase digital content and subscriptions to games. *Id.*

CS:GO is a video game developed and distributed by Valve. *Id.* ¶ 3. CS:GO is a multiplayer first-person shooter video game where two teams compete to complete objectives or eliminate the enemy team. *Id.*

In 2013, Valve introduced virtual items called "skins" into CS:GO. "Skins" are virtual CS:GO weapons that have different finishes or textures. *Id.* ¶ 5. Skins are entirely cosmetic and do not affect gameplay; they only change how weapons look. *Id.* Skins can be collected when playing CS:GO, for example, through random "drops" or by opening weapon "crates" during game play. *Id.* Skins can also be acquired through trades with other players over Steam using CS:GO's trade feature. *Id.* And Steam subscribers can "buy" and "sell" skins in the Steam Market using virtual Steam currency in their Steam Wallet. *Id.*

B.   **Valve's Headquarters, its Operations, its Witnesses and its Documents are all in Washington State.**

Valve is a Washington State corporation, located in Bellevue, Washington. Boyd Decl.

¶ 4. Substantially all of Valve's employees work in Washington, including all officers and directors of the company. *Id.* Valve's software and website development and design teams are located in Bellevue, Washington, as are the Valve employees who design, develop, maintain, manage and distribute Steam and CS:GO. *Id.* Valve's documents and other materials relevant to the design, development, maintenance, and distribution of Steam and CS:GO are also located in Bellevue, Washington, as are Valve's other books and records. *Id.*

  **C.** **Steam Users Agree to Valve's Terms Of Service When Creating a Steam Account and When Making Purchases on Steam.**

All users are required to create a Steam account to use Steam. Boyd Decl. ¶ 6. A user can create a Steam account in two ways. *Id.* The user can either (1) create an account on the "Create an Account" webpage accessible through the Steam website at http://store.steampowered.com/ or (2) create an account through the "Steam client," a software program that the user installs on his or her computer. *Id.* As part of both of these account-creation methods, the user is presented with the SSA and asked to "[p]lease review" or "[p]lease read" the agreement. *Id.* ¶¶ 6–9. The user is also informed that he or she must agree to the terms of the SSA and click an "I agree" box to continue with creating the account. *Id.*

A Steam account cannot be created unless the subscriber either (1) accepts the SSA on the "Create an Account" webpage by clicking a box under the SSA stating "I agree AND am 13 years of age or older" or (2) accepts the SSA when creating a Steam account on his or her computer by clicking a button under the SSA labeled "I AGREE." *Id.* ¶¶ 6–9. Under both account-creation methods, it is impossible to create a Steam account unless the user affirmatively indicates his or her acceptance of the SSA. *Id.* ¶¶ 8–9.

After setting up an account, a Steam subscriber may purchase subscriptions to video games or other digital content on Steam. *Id.* ¶ 11. Before Steam will allow a subscriber to complete any such purchase, he or she must click a box that states, "I agree to the terms of the Steam Subscriber Agreement." *Id.* The SSA is hyperlinked to the words "Steam Subscriber

3

Agreement." *Id.* & Ex. D. If a subscriber does not click the box to agree anew to the SSA when making a purchase through Steam, the screen refreshes and a notice appears at the top of the webpage, saying, "You must agree to the terms of the Steam Subscriber Agreement to complete this transaction." Boyd Decl. ¶ 12. The user cannot complete the purchase until he or she clicks the box to accept the SSA. *See id.* & Ex. E.

Steam users can also access the SSA on Valve's website, where it is publicly available to anyone at any time. *See* http://store.steampowered.com/subscriber_agreement/.

### D. Under the SSA, Courts in King County, Washington Have Exclusive Venue and Jurisdiction Over Litigation Between the Parties.

The SSA includes a forum-selection clause (Section 10). It designates King County, Washington as the exclusive forum for any disputes heard in court and deems Washington law controlling, saying in relevant part:

> 10. APPLICABLE LAW/JURISDICTION
>
> . . .
>
> You agree that this Agreement shall be deemed to have been made and executed in the State of Washington, U.S.A. and any dispute arising hereunder shall be resolved in accordance with the law of Washington excluding the law of conflicts and the Convention on Contracts for the International Sale of Goods. Subject to Section 11 (Dispute Resolution/Binding Arbitration/Class Action Waiver) below, you agree *that any claim asserted in any legal proceeding by you against Valve shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction with respect to the dispute between the parties and you hereby consent to the exclusive jurisdiction of such courts*. In any dispute arising under this Agreement, the prevailing party will be entitled to attorneys' fees and expenses.

Boyd Decl. ¶ 14 & Ex. F (emphasis added).

### E. Plaintiff is a Steam Subscriber Who Repeatedly Agreed to Valve's SSA and the Forum-Selection Clause.

Plaintiff is a Steam subscriber who alleges he created a Steam account when he was 15 or 16 years old, "well before" February 2015. First Amended Compl. ¶ 79 (Dkt. #9) ("FAC"). In

4

the course of doing so, Plaintiff was presented with the SSA as described above and accepted it in order to complete his account set-up. Boyd Decl. ¶¶ 6–9.

Plaintiff alleges he used his Steam account to buy CS:GO on February 10, 2015 and, after that, virtual CS:GO skins. FAC ¶¶ 76, 79, 80. In total, Plaintiff alleges that he made at least eight purchases over Steam between February 10, 2015 and May 6, 2016. *Id.* ¶¶ 79-80. Plaintiff accepted the SSA anew just before he completed each purchase. Boyd Decl. ¶¶ 11–12.

According to voter registration records available through the Connecticut Secretary of State's website, Plaintiff's birthdate is April 27, 1998, and he turned 18 on April 27, 2016. Declaration of Gavin W. Skok ("Skok Decl.") ¶¶ 2–4 & Exs. A, B. The most recent purchase he alleges he made through Steam was on May 6, 2016 (FAC ¶ 80), which is after he turned 18. Plaintiff again accepted the SSA – after he reached majority age – to complete that purchase, which binds him to the forum-selection clause the SSA contains. Boyd Decl. ¶¶ 11–12.

Plaintiff claims he later "traded" his skins to third-party sites outside of Steam, where he gambled them. FAC ¶ 82. The Court need not wade into the facts of Plaintiff's gambling to decide this Motion. But at the appropriate time Valve will prove that it has no business relationship with any of those sites and does not receive any revenue from them or from bets placed on the sites. To the contrary, those sites misuse Steam's "trade" feature and the OpenID API (an industry-standard method for enabling logging into websites using an existing account from another service, such as Facebook or Google), in violation of Valve's terms of use.[1]

Plaintiff filed his Class Action Complaint on June 23, 2016 (Dkt. #1) claiming Valve was complicit in creating, sustaining and facilitating a third-party online gambling market. *See, e.g.,* FAC ¶ 3. Only a few days later on June 28, he filed a First Amended Complaint. (Dkt. #9). Plaintiff chose to file his lawsuit in this District, ignoring his agreement, affirmed only seven weeks earlier after he turned 18, that any litigation heard in court between Valve and him would

---

[1] *See* http://store.steampowered.com/news/22883/ (last viewed July 19, 2016).

be brought exclusively in a state or federal court in King County, Washington. He seeks to represent a national class of Steam users who also purchased CS:GO skins through Steam. FAC ¶ 93.

## ARGUMENT

Plaintiff agreed that the exclusive jurisdiction and venue for any disputes heard in court between Valve and him lies in state or federal court in King County, Washington. Plaintiff took the benefits of his agreement with Valve by using its Steam service for years and affirmed the agreement after he turned 18. But when a dispute arose, he ignored it and filed a class action in Connecticut instead. Plaintiff bears a heavy burden in asking the Court to let him avoid his agreement – a burden he cannot carry here. Plaintiff's agreement with Valve is valid and should be enforced, and this case should be transferred to the United States District Court for the Western District of Washington under 28 U.S.C. § 1404(a).

### I. Plaintiff Bears a Heavy Burden in Trying to Avoid the Agreed Forum.

"[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases" because doing so protects the parties' "legitimate expectations and furthers vital interests of the justice system." *Atl. Marine*, 134 S. Ct. at 581 (ellipses in original) (quoting *Stewart Org. Inc. v. Ricoh Corp.* 487 U.S. 22, 33 (1988) (Kennedy, J. concurring)). A motion to transfer the case to the agreed-upon federal forum is properly brought under 28 U.S.C. § 1404(a) when the parties' agreement includes a forum-selection clause. *Id.*

Courts use a two-step analysis to decide whether a case should be transferred to the parties' agreed-upon forum. The first is determining that the forum-selection clause is valid. *Atl. Marine*, 134 S. Ct. at 581 n.5. In this step, the "burden [is] on the plaintiff, who brought suit in a forum other than the one designated by the forum-selection clause, to make a strong showing in order to overcome the presumption of enforceability." *New Moon Shipping Co. Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997) (internal quotation marks omitted).

4822-9251-7172.12
63478.00052

Next, the second step applies the modified *forum non conveniens* factors the Supreme Court identified in *Atlantic Marine*, which change a *forum non conveniens* analysis in three ways. *Atl. Marine*, 134 S. Ct. at 581-82. First, the plaintiff's choice of forum is given no weight. *Id.* at 581. Second, the court does not consider the "private interest" factors evaluated in ordinary *forum non conveniens* transfer motions, but considers only the "public interest" factors. *Id.* at 582. Third, the transferee court in the contractually agreed venue does not apply the original venue's law as it normally would after a § 1404(a) transfer. *Id.* at 582–83.

Only under "extraordinary circumstances unrelated to the convenience of the parties" should the motion to transfer be denied. *Id.* "Because [public-interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 582.

## II.     The Parties' Forum-Selection Clause Is Valid and Enforceable.

The parties' agreed-upon forum-selection clause is valid under controlling law. Validity is determined using a four-part analysis. *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014); *see also U.S. ex rel. QSR Steel Corp. LLC v. Safeco Ins. Co. of Am.* No. 3:14-CV-1017 VAB, 2015 WL 4393576, at *6 (D. Conn. July 16, 2015) (applying four-part analysis). The Court first makes three determinations:

(1) Whether the clause "was reasonably communicated to the party resisting enforcement";

(2) Whether the clause is mandatory or permissive; and

(3) Whether "the claims and parties involved in the suit are subject to the forum selection clause."

*Martinez*, 740 F.3d at 217. The clause is presumed enforceable if these factors are satisfied, and "[a] party can overcome this presumption only by (4) 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.* 407 U.S. 1, 15

7

4822-9251-7172.12
63478.00052

(1972)).

The forum-selection clause in Plaintiff's contract with Valve is valid and enforceable under this analysis.

### A. The Forum-Selection Clause Was Reasonably Communicated to Plaintiff.

The first prong of the validity analysis – that the agreement was reasonably communicated – is readily satisfied. "Second Circuit precedent is clear ... that the party challenging the forum selection clause need not have actually read the provision, so long as the physical characteristics of the contract reasonably communicated the existence of the clause, and the circumstances surrounding the signing of the contract permitted the [party trying to avoid the forum-selection clause] to become meaningfully informed of the contractual terms at stake." *United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 225 (D. Conn. 2003) (quotation omitted).

The forum-selection clause in the SSA is clear and unambiguous. The SSA opens by telling Steam subscribers it "is a legal document that explains your rights and obligations" and asks them to "[p]lease read it carefully." The forum-selection clause is set apart in a separate numbered paragraph and labeled in capital letters: "APPLICABLE LAW/ JURISDICTION." It plainly tells Steam subscribers they are agreeing that "any claim asserted in any legal proceeding by you against Valve shall be commenced and maintained exclusively in any state or federal court located in King County, Washington" and that they "hereby consent to the exclusive jurisdiction of such courts." Boyd Decl. ¶ 14 & Ex. F § 10.

Plaintiff was presented with this clear language first when he created his Steam account two or three years ago and affirmed it with each of the eight purchases he alleged, most recently on May 6, 2016 (FAC ¶¶ 79, 80), after he turned 18. Each time, he checked a box stating, "I agree." Boyd Decl. ¶¶ 6–9, 11–12.

This type of agreement, which requires a subscriber to take affirmative action to agree to its terms, is often called a "click-wrap agreement." *See Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 395-99 (E.D.N.Y. 2015). Courts in the Second Circuit routinely hold that click-wrap

8

agreements satisfy the "reasonably communicated" prong of the validity analysis. *See, e.g., TradeComet.com LLC v. Google, Inc.* 693 F. Supp. 2d 370, 378 (S.D.N.Y. 2010), *aff'd*, 647 F.3d 472 (2d Cir. 2011) and 435 F. App'x 31 (2d Cir. 2011); *Person v. Google Inc.* 456 F. Supp. 2d 488, 496–97 (S.D.N.Y. 2006); *Universal Grading Serv. v. eBay, Inc.* No. 08 Civ. 3557, 2009 WL 2029796, at *12 (E.D.N.Y. June 10, 2009). Moreover, in a proposed class action case entitled *Grigsby v. Valve Corp.*, No. 2:11-cv-09905-JAK-MAN, the Central District of California enforced a materially identical forum-selection clause in Valve's SSA that was presented in the same manner as here. Skok Decl. ¶ 5 & Ex. C.

B.  **The Forum-Selection Clause Is Mandatory.**

The forum-selection clause in the SSA uses mandatory language ("shall be commenced and maintained") and expressly says that King County, Washington courts shall have "exclusive" jurisdiction and venue. Boyd Decl. ¶ 14 & Ex. F § 10. This is a mandatory forum-selection clause. As the Second Circuit explained in *S.K.I. Beer Corp. v. Baltika Brewery*:

> In determining whether the forum-selection clause is mandatory, our initial focus is on the language of the contract. ***A forum-selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language.*** When only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive. Of course ***if mandatory venue language is employed, the clause will be enforced***.

612 F.3d 705, 708 (2d Cir. 2010) (emphasis added, quotations and citations omitted) (forum-selection clause was mandatory when it said all disputes "shall be considered by the Arbitration Court of St. Petersburg and the Leningradskaya Oblast"); *see also Phillips v. Audio Active Ltd.* 494 F.3d 378, 386 (2d Cir. 2007) ("reference to a particular location, although lacking the specificity of a particular court or city," coupled with its use of "the phrase 'are to be brought'[,] establishe[d] England as an obligatory venue for proceedings within the scope of the clause.").

Numerous decisions from this District have found similar forum-selection clauses

9

mandatory. *See, e.g., BNY AIS Nominees Ltd. v. Quan*, 609 F. Supp. 2d 269, 274 (D. Conn. 2009) (finding clause mandatory where parties submitted to "exclusive jurisdiction of the courts located within Bermuda"); *Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 245 (D. Conn. 2001) (finding clause mandatory when it said any court action "shall be brought in any court of competent jurisdiction within the State of California, County of Los Angeles"); *F5 Capital v. RBS Sec. Inc.* No. 3:14-CV-1469 (VLB), 2015 WL 5797019, at *4 (D. Conn. Sept. 30, 2015) (finding clause mandatory); *SLSJ, LLC v. Kleban*, No. 3:14-CV-390 CSH, 2015 WL 1973307, at *22 (D. Conn. Apr. 30, 2015) (same); *Madsen v. RBS Citizens, N.A.*, No. 3:13-CV-00357 CSH, 2013 WL 2367836, at *5 (D. Conn. May 29, 2013) (same).

### C. The Claims and Parties Involved in the Suit Are Subject to the Forum-Selection Clause.

This prong is readily established. Valve and Plaintiff are the parties to the contract containing the forum-selection clause (the SSA). Plaintiff is the "you" referred to in the forum-selection clause because he is the person that registered a Steam user account and accepted the terms of the SSA then and with each purchase. His claims are subject to the clause because they are asserted in his lawsuit against Valve.

### D. The SSA is Enforceable Against Plaintiff Regardless of Whether He Was a Minor When He Created His Steam Account.

Plaintiff asserts that the SSA does not bind him because he was under 18 when he created his Steam account and, later on, purchased CS:GO in February 2015. (FAC ¶ 76.) Plaintiff is wrong.

First, regardless of when Plaintiff *first* agreed to the SSA, he agreed to it anew on May 6, 2016, ten days *after* his eighteenth birthday on April 27, 2016. (FAC ¶ 80; Skok Decl. ¶¶ 2–4; Boyd Decl. ¶¶ 11–12). Checking the box next to "I agree to the terms of the Steam Subscriber Agreement" (with the SSA hyperlinked) on May 6, 2016 bound him to the SSA.

10

Second, Connecticut[2], Washington[3] and federal common law[4] are in accord that a contract made by a minor is merely voidable – not void – and must be disaffirmed within a reasonable time after reaching majority age. Plaintiff did not do so here, but instead affirmed his agreement on May 6, 2016 after turning 18.

Third, Plaintiff is equitably estopped from now disaffirming the SSA because he took the benefits of that contract by using Steam for years. *See E.K.D. ex rel. Dawes v. Facebook, Inc.* 885 F. Supp. 2d 894, 900 (S.D. Ill. 2012) (rejecting minor plaintiffs' argument that they disaffirmed Facebook's Terms of Use by bringing the lawsuit against Facebook because Plaintiffs have used and continue to use facebook.com and minors may not "accept the benefits of a contract, then seek to void the contract in an attempt to escape the consequences of a clause that does not suit them"); *Paster v. Putney Student Travel, Inc.* No. CV 99–2062 RSWL, 1999 WL 1074120 (C.D. Cal. June 9, 1999) (sixteen-year-old high school student could not escape forum-selection clause where she had already reaped benefit); *Morrow v. Norwegian Cruise Line Ltd.* 262 F. Supp. 2d 474 (M.D. Pa. 2002) (minor could not escape forum-selection clause where could not disgorge or give back the benefits of her contract).

---

[2] *See Yale Diagnostic Radiology v. Estate of Harun Fountain*, 267 Conn. 351, 355-56, 838 A.2d 179, 182 (2004) ("Connecticut has long recognized the common-law rule that a minor child's contracts are voidable. Under this rule, a minor may, upon reaching majority, choose either to ratify or to avoid contractual obligations entered into during his minority.").

[3] *See* RCW 26.28.030 ("A minor is bound, not only by contracts for necessaries, but also by his or her other contracts, unless he or she disaffirms them within a reasonable time after he or she attains his or her majority, and restores to the other party all money and property received by him or her by virtue of the contract, and remaining within his or her control at any time after his or her attaining his or her majority."); *Finney v. Farmers Ins. Co.* 21 Wash. App. 601, 607, 586 P.2d 519, 524 (1978), ("The contracts of a minor are not void, but voidable, and unless disaffirmed within a reasonable time after attaining majority, are valid."), *aff'd*, 92 Wash. 2d 748, 600 P.2d 1272 (1979).

[4] *See Rodriguez v. Vuono*, 757 F. Supp. 141, 149 (D.P.R. 1991) (applying federal common law and holding that "[w]here a party signs a contract that is voidable, but then goes on to continue to act in accordance with the terms of the contract even after learning of the facts which made the contract voidable (or after reaching the age of majority, in the case of contracts voidable for infancy), the party affirms the otherwise voidable contract").

11

### E.  Plaintiff Cannot Show that Enforcement of the Forum-Selection Clause Would Be Unreasonable or Unjust.

The forum-selection clause is presumed enforceable because it was reasonably communicated to Plaintiff, has mandatory force, and covers the claims and parties involved in the dispute. *Martinez*, 740 F.3d at 217. The only remaining inquiry is whether enforcement would be unreasonable or unjust, which is determined by reference to federal law. *Martinez*, 740 F.3d at 227. Such circumstances are very narrow, and arise only where

> (1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

*Id.* 227–28 (quotations omitted). Plaintiff cannot show any of these four circumstances.

#### 1.  *There is no fraud or overreaching.*

Plaintiff has not claimed the SSA was the product of fraud or overreaching, and he would have no basis to do so. Nor would such a claim be persuasive in light of the fact Plaintiff was presented with, and agreed to, the SSA and its forum-selection clause at least nine different times before and after he turned 18. *Cf. Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991) (rejecting argument that non-negotiated forum-selection clauses in form contracts are unenforceable simply because they are not the subject of bargaining).

#### 2.  *Plaintiff cannot establish that Washington law is fundamentally unfair.*

Plaintiff cannot show that the Washington law to be applied by the transferee federal court in the Western District of Washington is fundamentally unfair. Questions of fundamental unfairness typically arise only when the transferee forum is a foreign country with significantly different legal rules and procedures. Even then, plaintiffs have a high burden to show that the foreign law is unfair. *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) ("[I]t is not enough that the foreign law or procedure merely be different or less favorable than that of the

United States . . . . [T]he question is whether the application of the foreign law presents a danger that the [the plaintiff] will be deprived of any remedy or treated unfairly.") (quotations omitted)).

Here, the transferee court in Washington is likely to apply the same law as this Court would because the SSA designates Washington law as governing. Boyd Decl. Ex. F. § 10. Even if Plaintiff were to argue that Connecticut law applies notwithstanding his agreement, federal courts in Washington are equally able to apply Connecticut law. *Pitney Bowes, Inc. v. Nat'l Presort, Inc.* 33 F. Supp. 2d 130, 132 (D. Conn. 1998) ("[F]ederal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State, and familiarity with such foreign law presents no technological problems in the modern age of WESTLAW and LEXIS.").

This case is not close to other cases where the law in the transferee district has been found to be fundamentally unfair. *See, e.g., Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189, 1199 (S.D.N.Y. 1996) (denying motion to dismiss for *forum non conveniens* where Ghanaian citizen with political asylum established that he would face persecution if he brought a case in Ghana alleging that he had been tortured by a Ghanaian official) *and Rasoulzadeh v. Associated Press*, 574 F. Supp. 854, 861 (S.D.N.Y. 1983), *aff'd*, 767 F.2d 908 (2d Cir. 1985) (finding alternative forum inadequate because plaintiffs would not "obtain justice at the hands of the courts administered by Iranian mullahs" and "would probably be shot" if they returned to Iran).

       3.    *Enforcement of the forum-selection clause is consistent with Connecticut public policy.*

Plaintiff cannot show that transferring the case to a federal court in Washington will contravene a strong Connecticut public policy. To the contrary, Connecticut public policy supports enforcement of forum-selection clauses. *U.S. Trust Co. v. Bohart*, 197 Conn. 34, 42, 495 A.2d 1034, 1040 (1985) ("Absent a showing of fraud or overreaching, such forum clauses will be enforced by the courts.").

    4. *Litigating this case in Washington will not be prohibitively difficult.*

  Plaintiff will not be deprived of his day in court if this case is transferred to the Western District of Washington. Plaintiff knew when he filed this lawsuit that Valve was located in Washington and that he had agreed to exclusive Washington venue, and, because he filed this case as a class action "where there are hundreds of potential plaintiffs," Plaintiff's claim that Connecticut "is appropriate merely because it is his home forum is considerably weakened." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947). Additionally, Plaintiff's counsel will be spending much of the discovery phase of the case in Washington State no matter where the suit is pending because the relevant Valve witnesses and materials are in Washington State. Boyd Dec. ¶ 4. And, regardless of whether this case is in Connecticut or Washington State, two of Plaintiff's chosen counsel are not located in Connecticut and will have to travel for discovery and trial.

  The fact Plaintiff himself may have to travel to Washington State for trial does not render litigation so difficult and inconvenient that he effectively will be deprived of his day in court. *See Starkey v. G Adventures, Inc.* 796 F.3d 193, 198 (2d Cir. 2015) (time and expense to travel to Canada and difficulty of ensuring that witnesses would testify on plaintiff's behalf did not render forum-selection clause unenforceable); *Carron ex rel. Carron v. Holland Am. Line-Westours Inc.*, 51 F. Supp. 2d 322, 327 (E.D.N.Y. 1999) (rejecting arguments about inconvenience and transferring case to the Western District of Washington); *see also United Rentals, Inc. v. Faulk*, No. 3:10CV1398 JBA, 2011 WL 2550619, at *2 (D. Conn. June 21, 2011) (rejecting arguments about inconvenience of litigating in Florida). Mere inconvenience to Plaintiff is insufficient to establish the unreasonableness of enforcing a forum-selection clause. *See Phillips*, 494 F.3d at 393 (enforcing forum-selection clause requiring litigation of dispute in England; plaintiff's claim alleged that "none of his witnesses, documents, or any parties to the action are located in England" merely established that litigation in England would be "more costly or difficult, but not that it is impossible."). Litigation in Washington, where most of the relevant witnesses and

14

documents are located, will not be prohibitively difficult.

Based on the analysis of the four factors above, Plaintiff cannot overcome the presumption of enforceability. The forum-selection clause in the SSA is valid and enforceable.

### III. Plaintiff Cannot Establish the "Extraordinary Circumstances" Necessary to Defeat This Motion to Transfer.

Because the forum-selection clause is valid, transfer to the agreed forum should be denied only under extraordinary circumstances. *Atl. Marine*, 134 S. Ct. at 581. Courts determine whether extraordinary circumstances exist by applying the modified *forum non conveniens* factors from *Atlantic Marine*. *Id.* at 581–82. Those factors give the plaintiff's choice of forum no weight; he "has effectively exercised [his] 'venue privilege' before a dispute arises." *Id.* at 582. Courts applying the factors "should not consider arguments about the parties' private interests" because the private interest factors are deemed to "weigh entirely in favor of the preselected forum." *Id.* Rather, a district court weighs only public-interest factors, *id.* at 582, which "may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981)). The plaintiff bears the burden of showing "why the court should not transfer the case to the forum to which the parties agreed." *Id.* 582.

No public-interest factors here present the extraordinary circumstances necessary to defeat enforcement. Court congestion is not a problem in the Western District of Washington. To the contrary, the Administrative Office of the United States Courts' most recent statistics for district courts show that cases resolve quicker on average in the Western District of Washington than in the District of Connecticut, with a median time from filing to trial in civil cases of only 17.6 months in the Western District of Washington but 39.5 in the District of Connecticut (for

the twelve-month period ended on March 31, 2016).[5] Moreover, the straightforward nature of the claims will help avoid any court congestion. *See U.S. ex rel. QSR Steel Corp. LLC v. Safeco Ins. Co. of Am.* No. 3:14-CV-1017 VAB, 2015 WL 4393576, at *9 (D. Conn. July 16, 2015) (holding that no court congestion would result because dispute was straightforward).

Washington State's local interest is greater than Connecticut's because Valve is a Washington company with significant operations and most of its employees in Washington. Moreover, to the extent Plaintiff purports to bring his claims on behalf of a class of persons from across the United States (see FAC ¶ 93), the citizens of Connecticut will have no more local interest than citizens in other states across the country.

Finally, as discussed above, the SSA mandates the application of Washington law, but a federal court in Washington will not have difficulty applying the laws of Connecticut or other states, if necessary. *See Atl. Marine*, 134 S. Ct. at 584 ("federal judges routinely apply the law of a State other than the State in which they sit"); *QSR Steel*, 2015 WL 4393576, at *9 (holding that local-law factor weighed in favor of transfer because contract mandated that law of the other forum applied); *RGJP Enters.* No. 3:14-CV-01911 MPS, 2015 WL 3440347, at *2 (D. Conn. May 6, 2015) (same).

Plaintiff cannot establish circumstances so extraordinary that they would justify refusing to enforce the valid forum-selection clause.

## CONCLUSION

Plaintiff agreed at least nine times that King County, Washington is the exclusive forum for any lawsuit between Valve and him. That agreement is unambiguous and valid, and should be enforced as written. Accordingly, the Court should transfer this action to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404(a).

---

[5] *See* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/03/31-1.

DATED this 26th day of July, 2016.

        RIDDELL WILLIAMS P.S.

By  /s/ Gavin W. Skok
   Its Attorney
   Gavin W. Skok, WSBA #29766
   *(pro hac vice pending)*
   1001 Fourth Avenue, Suite 4500
   Seattle, WA 98154
   Ph. (206) 624-3600
   Fax (206) 389-1736
   gskok@riddellwilliams.com

WIGGIN AND DANA LLP

By  /s/ Timothy A. Diemand
   Its Attorney
   Robert M. Langer, Federal Bar #ct06305
   Timothy A. Diemand, Federal Bar #ct18075
   20 Church Street, 16th Floor
   Hartford, Connecticut 06103
   Ph. (860) 297-3700
   Fax (860 525-9380
   rlanger@wiggin.com
   tdiemand@wiggin.com

*Attorneys for Defendant Valve Corporation*

25920\1\3512959.v1

4822-9251-7172.12
63478.00052